IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOHNNY MOORE,                           )
     Plaintiff,                        )
                                       )
       v.                              )    Civil No. 3:15cv348 (JAG)
                                       )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
     Defendant.                        )
_____  )

REPORT AND RECOMMENDATION

On February 24, 2012, Johnny Moore ("Plaintiff") applied for Social Security Disability Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from arthritis in his back, neck and back issues, tennis elbow in both arms and carpel tunnel syndrome in both wrists, with an alleged onset date of October 15, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in formulating Plaintiff's residual function capacity ("RFC"). (Plaintiff's Brief in Support of His Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 11) at 2.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter now

ripe for review.[1]  For the reasons that follow, the Court recommends that Plaintiff's Motion for

Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment

(ECF No. 12) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On February 24, 2012, Plaintiff filed an application for DIB with an alleged onset date of

October 15, 2011.  (R. at 170, 174.)  The SSA denied these claims initially on May 23, 2012, and

again upon reconsideration on March 21, 2013.  (R. at 70, 83.)  At Plaintiff's written request, the

ALJ held a hearing on August 6, 2014.  (R. at 28.)  On October 1, 2014, the ALJ issued a written

opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under

the Act, because Plaintiff could perform his past relevant work.  (R. at 9-20.)  On April 3, 2015,

the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner subject to review by this Court.  (R. at 1-3.)

## II.  STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court will "affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion.  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig*

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the ALJ employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the

ALJ determines whether the claimant can perform any work existing in significant numbers in the national economy.  20 C.F.R. § 416.920(a)(4)(v).

## III.  THE ALJ'S DECISION

On August 6, 2014, the ALJ held a hearing during which Plaintiff (represented by a non-attorney representative) and an impartial vocational expert ("VE") testified.  (R. at 28-59.)  On October 1, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R. at 20.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim.  (R. at 12-14.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2014.  (R. at 14.)  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and asthma.  (R. at 14.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (R. at 15.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work as defined in 20 C.F.R. 404.1567(c), except that he could balance without limitation and frequently stoop, kneel, crouch and crawl.  (R. at 15.)  He could also frequently climb ladders, ropes, scaffolds, ramps and stairs.  (R. at 15.)

Given the above RFC, at step four the ALJ determined that Plaintiff retained the capability to perform past relevant work as a truck driver.  (R. at 19.)  Because of the finding at step four, the ALJ did not perform step five.  (R. at 19.)  Plaintiff did not qualify as disabled under the Act.  (R. at 19.)

IV. ANALYSIS

Plaintiff, fifty-nine years old at the time of this Report and Recommendation, previously worked as a truck driver. (R. at 71, 175.) He applied for DIB, alleging disability from arthritis in his back, neck and back issues, tennis elbow in both arms and carpel tunnel syndrome in both wrists, with an alleged onset date of October 15, 2011. (R. at 174.) Plaintiff's appeal to this Court alleges that the ALJ erred in formulating Plaintiff's RFC by assigning insufficient weight to the opinions of Plaintiff's treating sources. (Pl.'s Mem. at 2.) Additionally, Plaintiff assigns error to the ALJ's credibility assessment with respect to Plaintiff's work history. (Pl.'s Mem. at 2.) For the reasons set forth below, the ALJ did not err in his decision.

A. **The ALJ did not err in his assignment of weight to the medical opinions.**

Plaintiff argues that the ALJ erred in formulating his RFC, because he failed to consider the uncontradicted medical opinion evidence offered by treating and examining physicians. (Pl.'s Mem. at 3.) Plaintiff argues that these physicians' opinions deserved more weight. (Pl.'s Mem. at 3.) Defendant responds that the ALJ properly evaluated the medical opinion evidence. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 12) at 7.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b). Generally, the claimant bears the burden of providing the evidence that the ALJ utilizes in making his RFC determination. 20 C.F.R. § 416.945(a)(3). However, before finding the claimant not disabled, the ALJ must develop the claimant's complete medical history, including

scheduling consultative examinations if necessary. *Id.* The RFC must incorporate impairments

supported by the objective medical evidence in the record, as well as those impairments that have

basis in the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va.

June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

To determine which impairments to incorporate, the ALJ must analyze the claimant's

medical records provided by the claimant and any medical evidence from any ordered

consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e),

404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical

opinions, including those from Plaintiff's treating sources, consultative examiners or other

sources that comport with each other, then the ALJ makes a determination based on that

evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict

internally with each other or other evidence, the ALJ must evaluate the opinions and assign them

respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6),

(e), 416.927(c)(2)-(6),(e).

Under the regulations, the ALJ may only consider an "acceptable medical source" as a

treating source that offers an opinion entitled to controlling weight. SSR 06-03p. Acceptable

medical sources include licensed physicians, licensed or certified psychologists and certain other

specialists, depending on the claimed disability. 20 C.F.R. §§ 404.1527(a), 416.913(a).

Under the applicable regulations and case law, a treating source's opinion deserves controlling

weight if it enjoys support from medically acceptable clinical and laboratory diagnostic

techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at

590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not

require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the

6

source opines on the ultimate issue of disability for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when it otherwise lacks support. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn v Colvin*, No. 14-1565, 2015 WL 3451568, at *8 (4th Cir. June 1, 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding the weight afforded to a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine a claimant's disability as that term is defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

In this case, the ALJ gave the medical opinions little weight, as he found the opinions inconsistent with other medical evidence in the record. (R. at 18-19.) The Court will review the ALJ's assignment of weight to the opinions of Dr. Daniels, Dr. Kowalski and the state agency physicians to determine whether the ALJ erred.

### i. The ALJ did not err with respect to Dr. Daniels or Dr. Kowalski.

Plaintiff argues that the ALJ should have given great weight to the opinion of John Kowalski, M.D., one of Plaintiff's treating physicians. (Pl.'s Mem. at 3.) Plaintiff also alleges that the ALJ gave insufficient weight to the opinion of Kennedy Daniels, M.D., an orthopedic specialist. (Pl.'s Mem. at 7.) Defendant contends that the ALJ properly evaluated the opinion evidence. (Def.'s Mem. at 7.)

On January 12, 2011, before the alleged onset date, Dr. Daniels treated Plaintiff and recommended light duty work. (R. at 278.) However, Dr. Daniels also noted improvement during that same visit. (R. at 278.) Dr. Daniels' notes do not give the impression of permanence for his light duty recommendation. (R. at 278.)

On July 8, 2014, Dr. Kowalski completed a questionnaire regarding Plaintiff's ability to perform work-related activities. (R. at 810.) This questionnaire forms the basis for Plaintiff's assignment of error. (Pl.'s Br. at 3.) Dr. Kowalski's responses indicate that Plaintiff could not perform a range of work consistent with any exertional level on a regular and continuing basis. (R. at 18, 810-11.) Specifically, Dr. Kowalski opined that Plaintiff could only occasionally lift ten pounds and could frequently lift less than ten pounds. (R. at 810.) He could not stand for more than two hours or sit for more than three hours. (R. at 810.) Further, Plaintiff would need to walk around for five minutes every fifteen minutes and might need to lie down every hour. (R. at 810.) Dr. Kowalski attributed these limitations to Plaintiff's lower back pain and shortness of breath. (R. at 810.) Additionally, Plaintiff could only occasionally twist, stoop, crouch or climb stairs or ladders. (R. at 811.) Dr. Kowalski noted further limitations with Plaintiff's ability to reach, push, pull, finger, handle and feel. (R. at 811.)

8

The ALJ accorded Dr. Daniels' recommendation little weight, because it pre-dated the alleged onset date and lacked consistency with the other medical record. (R. at 18.) Likewise, the ALJ accorded Dr. Kowalski's opinion little weight, as it also lacked consistency with the medical evidence in the record. (R. at 18.) The ALJ noted that the treatment records reflected that Plaintiff exhibited a normal range of neck motion, negative straight leg raising and full lower extremity strength with normal muscle bulk and tone. (R. at 18.) The ALJ also observed that the treatment records show intact sensation and reflexes, with normal coordination, posture and gait. (R. at 18.) Plaintiff had the ability to squat and balance, and also had normal respiratory effort, with no wheezes or rales. (R. at 18.) Because these treatment records conflicted with Dr. Kowalski's and Dr. Daniels' opinions, the ALJ assigned the opinions little weight. (R. at 18.)

Substantial evidence supports the ALJ's decision to give little weight to the doctors' opinions. Specifically, Plaintiff's spinal MRIs support the ALJ's decision. On February 13, 2012, an MRI of Plaintiff's thoracic spine revealed normal alignment and otherwise normal findings. (R. at 334.) On April 18, 2012, an MRI of Plaintiff's lumbar spine revealed normal alignment with minimal degenerative disc disease. (R. at 340.) Another MRI on Plaintiff's lumbar spine performed on January 16, 2013, revealed normal alignment and minimal disc desiccation for his age, although L5-S1 showed mild left foraminal stenosis. (R. at 513-14.) These MRIs support the ALJ's decision to discredit the opinion of Dr. Kowalski with respect to the limiting effects of Plaintiff's back pain.

Imaging relating to his pulmonary complaints likewise supports the ALJ's decision. On June 18, 2012, an MRI of Plaintiff's chest revealed normal findings with clear lungs and normal pulmonary vascularity, indicating that Plaintiff had a normal chest. (R. at 490-91.) Similarly, an MRI on Plaintiff's chest conducted on March 26, 2013, revealed a normal cardiomediastinal

silhouette.  (R. at 522.)  His lungs adequately expanded and revealed otherwise normal findings.
(R. at 522.)  On May 13, 2014, an MRI on Plaintiff's lungs again revealed normal findings with
well expanded lungs.  (R. at 537.)  These chest and lung results support the ALJ's decision to
give little weight to Dr. Kowalski's opinion that cited Plaintiff's shortness of breath as a limiting
factor in his work.

      Notes from numerous physical exams also support the ALJ's assignment of weight.
Plaintiff showed a normal range of motion in his neck.  (R. at 331, 501.)  He also exhibited
negative straight-leg raising and full leg strength.  (R. at 385, 435, 448, 629, 636.)  He lacked any
marked point tenderness.  (R. at 385, 629.)  On multiple occasions, Doctors noted that Plaintiff
exhibited normal muscle strength, tone, gait and balance.  (R. at 395, 418, 435, 448, 617.)
Plaintiff also demonstrated normal respiratory effort with no chronic cough, difficulty breathing,
wheezing or hoarseness.  (R. at 359, 362, 392, 395, 402, 409, 418, 441, 445, 452, 475, 484, 490,
501, 564, 617, 640.)  Other exams revealed normal range of motion in both hips, no tenderness to
palpitation, no swelling or edema, and a normal range of motion in both knees.  (R. at 419, 448,
452.)

      On May 17, 2012, Nancy Powell, M.D., conducted a consultative exam that supports the
ALJ's decision.  (R. at 341-346.)  She noted that Plaintiff had a normal range of motion in his
cervical spine, shoulders, elbows, wrists, hands, thoracolumbar spine, hips, knees and ankles.
(R. at 345.)  She found that Plaintiff did not have tenderness, edema, spasm or crepitus.  (R. at
345.)  He had 5/5 motor strength in all extremities.  (R. at 346.)  While the ALJ gave her ultimate
opinion little weight, he did rely on her objective findings.  (R. at 19.)  And, the objective
findings in the record support the ALJ's decision not to give greater weight to the opinions of Dr.
Kowalski or Dr. Daniels.

On November 20, 2012, Dawn Voros, D.P.T., noted that Plaintiff demonstrated good arm swing and trunk rotation, equal stride length and normal cadence when ambulating. (R. at 455.) A functional mobility test showed that Plaintiff could squat well, but with pain, and he could lunge well to both sides in addition to having good balance. (R. at 455.)

Likewise, Plaintiff's reported activities support the ALJ's decision that Plaintiff had greater capabilities than Dr. Kowalski or Dr. Daniels opined. On March 15, 2012, Plaintiff completed a function report in conjunction with his disability application. (R. at 196-203.) Plaintiff reported that on a typical day he eats breakfasts, watches television and possibly visits someone. (R. at 196.) He reported no problems with attending to his personal care. (R. at 197.) He reported only fixing his meals on a weekly basis because his wife prepared most of the meals, as she did before the alleged disability. (R. at 198.) Plaintiff reported completing some yardwork. (R. at 198.) Plaintiff went outside every day and drove alone when traveling. (R. at 199.) Once or twice a week, Plaintiff visited friends, and he went to church on a regular basis. (R. at 200.) He reported that his conditions affected his ability to lift, bend, stand, reach, walk, sit, kneel, climb stairs, use his hands, and complete tasks. (R. at 201.) However, on a pain questionnaire completed that same day, Plaintiff reported that his pain did not keep him from doing movements such as bending, squatting, stooping, reaching, standing or sitting. (R. at 194.)

Because substantial evidence supports the ALJ's decision to assign Dr. Kowalski's and Dr. Daniel's opinions limited weight, Plaintiff's challenge to the ALJ's decision on this basis must fail.

### ii. The ALJ did not err in his assignment of weight to the Agency physicians.

Plaintiff also argues that the ALJ erred in relying exclusively on the opinions of the agency's non-treating physicians. (Pl.'s Mem. at 7.) Defendant responds that the ALJ

reasonably relied on the state agency physicians' opinions. (Def.'s Mem. at 11.) Plaintiff's argument fails for two reasons. First, the ALJ may rely on state agency physicians, as discussed below. Second, the ALJ did not rely on the opinions of the Agency's reviewers to the exclusion of all other evidence.

As highly qualified physicians, the state agency medical consultants possess expertise in Social Security disability evaluations. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Therefore, when considering the opinion of a state agency medical consultant, the ALJ must evaluate those findings as he would for any other medical opinion. 20 C.F.R. §§ 1527(e)(2)(ii), 416.927(e)(2)(ii). Except when a treating source's opinion receives controlling weight, the ALJ must "explain in the decision the weight given to the opinions of a [s]tate agency medical . . . consultant . . . as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

Here, the ALJ properly fulfilled his duty with respect to the state agency opinions. He accorded the state agency medical consultants' opinions substantial weight, because he found consistency between the opinions and the medical evidence of the record, including the consultative medical examination. (R. at 19.) Additionally, he detailed the findings of the consultative medical examination that provided support for his assignment of weight. (R. at 19.) Therefore, the ALJ properly explained his decision to accord the state agency physicians substantial weight, and the Court will not disturb this decision.

Plaintiff's argument with respect to the state agency also fails, because the ALJ did not rely exclusively on the state agency physicians. Instead, he conducted an exhaustive review of the medical evidence in the record. (R. at 14-19.) The ALJ reviewed the treatment notes from Plaintiff's primary care physician, Dr. Kowalski. (R. at 16.) The ALJ also considered the results

12

from radiological imaging. (R. at 16-17.) Furthermore, the ALJ considered the notes from a consultative medical examination conducted by Dr. Nancy Powell. (R. at 17.) In reviewing the entire record, he parsed out the objective findings and determined that they did not substantiate Plaintiff's subjective complaints. (R. at 17.) These objective findings guided his decisions throughout the formulation of the RFC. (R. at 14-19.)

Substantial evidence supports the ALJ's assignment of weight to the opinions of Dr. Kowalski, Dr. Daniels, and the state agency physicians. Therefore, the ALJ did not err.

**B. The ALJ did not err in his credibility determination.**

Plaintiff next assigns error to the ALJ's credibility determination, arguing that the ALJ erroneously ignored Plaintiff's excellent work history. (Pl.'s Mem. at 12.) According to Plaintiff, the agency policy requires the ALJ to consider "evidence of attempts to work." (Pl.'s Mem. at 13.) Defendant responds that the ALJ reasonably assessed Plaintiff's credibility. (Def.'s Mem. at 15-16.)

When assessing Plaintiff's RFC, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those impairments that have basis in Plaintiff's credible complaints. In evaluating Plaintiff's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. 404.1529(a), 416.929(a). The first step requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 96-7p at 1-3. The ALJ must consider all of the relevant medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p at 5, n.3; *see also* 96-8p at 13 ("The RFC assessment must be based on all of the relevant medical evidence in the record . . . ."). If the underlying impairment could reasonably produce the individual's pain,

13

then the second part of the analysis requires the ALJ to evaluate Plaintiff's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility determination of Plaintiff's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, the case law has firmly established that Plaintiff's subjective allegations of pain do not, alone, constitute conclusive evidence of Plaintiff's disability. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) ("While the pain caused by an impairment . . . may of course render an individual incapable of working, allegations of pain and other subjective symptoms, without more, are insufficient.") The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

14

The ALJ does not need to specifically address Plaintiff's work history when making a credibility determination. First, in listing what relevant evidence must form the basis of the RFC assessment, SSR 96-8p includes only "evidence from attempts to work." SSR 96-8p at *5. Notably, it does not include past work history. *Id.* Second, in assessing a claimant's credibility, the regulations provide that the ALJ should consider all of the relevant evidence in the record, including the claimant's prior work record. 20 C.F.R. § 404.1529(c)(3). However, neither the regulations nor the policy statement mandate that the ALJ explain the weight given to every piece of evidence. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p; *see also Hur v. Barnhart*, 94 Fed.Appx 130, 133 (3d Cir. 2004) (explaining that the ALJ need not discuss every piece of evidence in the record.) Instead, the ALJ must only give "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at 4.

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible. (R. at 16.) He explained that the medical evidence did not support the limitations asserted by Plaintiff. (R. at 17.) The ALJ then detailed the specific objective findings that provided support for his determination. (R. at 17.) Furthermore, the ALJ explained that Plaintiff's activities conflicted with his allegations. (R. at 18.) Specifically, he noted that the claimant retained the capability to attend to his personal care, drove, prepared simple food, performed yard work, visited others, attended church, and followed written and spoken instructions. (R. at 18.) Substantial evidence supports the ALJ's decision.

Substantial evidence supports the ALJ's decision on the basis of Plaintiff's medical records. Specifically, Plaintiff's spinal MRIs support the ALJ's credibility determination. On

February 13, 2012, an MRI of Plaintiff's thoracic spine revealed normal alignment and otherwise normal findings. (R. at 334.) On April 18, 2012, an MRI of Plaintiff's lumbar spine revealed normal alignment with minimal degenerative disc disease. (R. at 340.) Another MRI on Plaintiff's lumbar spine performed on January 16, 2013, revealed normal alignment and minimal disc desiccation for his age, although L5-S1 showed mild left foraminal stenosis. (R. at 513-14.)

Imaging relating to his pulmonary complaints likewise supports the ALJ's decision. On June 18, 2012, an MRI of Plaintiff's chest revealed normal findings with clear lungs and normal pulmonary vascularity, indicating that Plaintiff had a normal chest. (R. at 490-91.) Similarly, an MRI on Plaintiff's chest conducted on March 26, 2013, revealed a normal cardiomediastinal silhouette. (R. at 522.) His lungs adequately expanded and demonstrated otherwise normal findings. (R. at 522.) On May 13, 2014, an MRI on Plaintiff's lungs revealed normal findings with well expanded lungs. (R. at 537.) These chest and lung images support the ALJ's credibility decision.

Dr. Powell's May 17, 2012 consultative exam also supports the credibility determination. (R. at 341-46.) She noted that Plaintiff had a normal range of motion in his cervical spine, shoulders, elbows, wrists, hands, thoracolumbar spine, hips, knees and ankles. (R. at 345.) She found that Plaintiff did not have tenderness, edema, spasm or crepitus. (R. at 345.) He had 5/5 motor strength in all extremities. (R. at 346.)

On November 20, 2012, Dawn Voros, D.P.T., noted that Plaintiff demonstrated good arm swing and trunk rotation, equal stride length and normal cadence when ambulating. (R. at 455.) A functional mobility test showed that plaintiff could squat well, but with pain, and he could lunge well to both sides in addition to having good balance. (R. at 455.) These objective findings support the ALJ's credibility determination.

16

Substantial evidence supports the ALJ's decision on the basis of Plaintiff's stated activities.  Plaintiff reported attending to his personal care and completing yardwork.  (R. at 198.)  He also visited friends, went to church and drove alone when traveling.  (R. at 198-99.)  On a pain questionnaire, Plaintiff reported that his pain did not prevent him from bending, squatting, stooping, reaching, standing or sitting.  (R. at 194.)

Furthermore, Plaintiff points to no evidence in the record that Plaintiff attempted to work after his alleged onset date, instead only pointing out his work history before the alleged onset date.  (Pl.'s Brief at 13.)  While the ALJ did not expressly consider Plaintiff's prior work history, he did offer specific reasons for the credibility finding that make clear to the reviewing Court the weight he gave to Plaintiff's statements.  Because the ALJ based his credibility determination on adequate reasons, thoroughly explained those reasons and came to a reasonable determination that does not contradict other findings of fact, this Court will not disturb his credibility determination.

## V.  CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

 

 

 

                                           /s/

                                           David J. Novak
                                           United States Magistrate Judge

Richmond, Virginia
Date:  January 4, 2016